FINIS BRYANT v. THE STATE.

No. 3907. Decided February 27, 1907.

**1.—Manslaughter—Motion for new Trial—Bill of Exceptions in Record.**

Where upon appeal no admitted or rejected testimony is pointed out even in motion for new trial, the court will not examine a voluminous record in order to discover the bills of exception to the admission or rejection of testimony.

**2.—Same—Charge of Court—Self-Defense—Statutes Construed.**

A homicide may be justifiable under article 677 of the Penal Code in the protection of the person against any other unlawful and violent attack besides those mentioned in the preceding articles 675-6, which justify a homicide where the attack endangers life or threatens serious bodily injury.

**3.—Same—Charge of Court—Attack Other Than One Which Threatens Life or Serious Bodily Injury.**

Upon trial for murder, where defendant's own testimony would appear to base his right of self-defense on the necessity of protecting himself against an attack which threatened his life or serious bodily injury, and that deceased was not at the time he was shot in the very act of attacking defendant, the court was not required to charge article 677 of the Penal Code with reference to an attack or threatened attack not provided for in articles 675-6, which latter the court submitted.

**4.—Misconduct of Jury—Discretion of Court.**

Where after conviction for manslaughter, defendant's motion for new trial set up as misconduct of jury the discussion by them of testimony not warranted under the charge, which was controverted by the State, and the court heard testimony pro and con and held there was nothing that showed that these matters were used to the prejudice of defendant, there was no error.

Appeal from the District Court of Cooke. Tried below before the Hon. J. H. Garnett.

The opinion states the case.

*Potter, Culp & Giddings,* for appellant.—On question of submitting article 677, Penal Code; Reily v. State, 27 Texas Crim. App., 606; Hunnicutt v. State, 20 Texas Crim. App., 634; Williford v. State, 42 S. W. Rep., 972; Bryant v. State, 47 S. W. Rep., 373; McCandless v. State, 57 S. W. Rep., 672.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and given three years in the penitentiary, and appeals.

The homicide occurred at Montague in Montague County, Texas, and was transferred and tried in Cooke County on a change of venue.

The facts briefly stated show that deceased, Jim Mack, was a railroad conductor on the Rock Island, and was attending court for sev-

eral days prior to the homicide at Montague in a civil damage suit. On the day of the homicide he was drinking. Late in the evening of the 10th of January, 1906, somewhere about 6 o'clock he (deceased) was at a barber-shop, in the town of Montague, on the gallery with several others, and appeared to be quarrelsome. Appellant came on the gallery, and deceased Mack turned to him and said, "Do you want to fight?" to which appellant replied, "No, I ain't hunting no fight." Deceased said, "No, you little son of a bitch, I will whip you anyway," and appellant says he threw his hand back towards his back, and he (appellant) retreated, went down the gallery about three posts, and deceased started towards him again. Appellant said, "Hold up there now," and shot up in the roof of the gallery in order to stop deceased. Deceased said, "Shoot, you son of a bitch." Then appellant shot the second time, which took effect on deceased and caused a mortal wound. Appellant shot a third time not intending to hit deceased. Appellant says that he shot him because he thought deceased was getting his gun out and he was cursing him, and that deceased kept coming, and he said, while deceased was coming, "to stop him, catch him." This was in substance, appellant's testimony as to the cause of the homicide and how it occurred. Appellant further explained that he had his pistol on that occasion because he had agreed to sell it to the barber, and was carrying it over there for that purpose. The evidence on the part of the State was somewhat variant from this in some of the details, though there is a concurrence as to how the difficulty began. The State's witnesses did not hear appellant say catch him, stop him, because he (appellant) shot, and they did not state that deceased was advancing toward appellant, nor do they state that he was making any demonstrations as if to get a pistol, and some of them stated after appellant got his pistol out deceased said "do not shoot."

Appellant, in his brief, relies entirely upon one proposition, but states that he does not abandon other grounds contained in his assignments. We note in motion for new trial he says that the court erred in admitting testimony and in excluding testimony as shown by bills of exception herein. No admitted or rejected testimony is pointed out, even in motion for a new trial, and we will not, as has been heretofore stated in a number of cases, in the absence of something suggesting or pointing out matters of this sort, examine a voluminous record in order to discover the bills of exception to the admission or rejection of testimony. If appellant does not think enough of these matters to even point them out, much less discuss them, we cannot undertake the task of discovering and discussing questions of this character. However, we will state the examination we have given the record does not, in our opinion, disclose any matters, of the character above referred to, of sufficient importance to require a discussion.

Appellant strenuously insists that the court should have submitted

in the charge on self-defense article 677 of the Penal Code; that while the court gave article 675 this, under the facts shown in the record, was not sufficient; that there was a phase of the case presenting and requiring the court to charge under article 677, which indicated that the attack being made, or about to be made, by deceased on appellant, may not have been for the purpose of endangering his life or inflicting serious bodily injury, the natural and probable consequences of which might result in death; but which was an unlawful and violent attack not provided for in the preceding article. Appellant not only presented this question by an exception to the court's charge, but he requested special instructions on the subject. The State contends that said article does not authorize the construction contended for by appellant; that under no circumstances has a defendant the right to slay unless his life is in danger or he is in danger of serious bodily injury, the natural and probable consequences of which may result in death. We agree to the contention that the homicide may be justifiable under article 677 in the protection of the person against any other unlawful and violent attack beside those mentioned in the preceding articles 675–6, which justifies a homicide where the attack endangers life or threatens serious bodily injury. See Kendall v. State, 8 Texas Crim. App., 569; Hill v. State, 10 Texas Crim. App., 618, and Horback v. State, 43 Texas, 257. For other authorities see Section 1166, White's Penal Code. In the light of the authorities above cited, and others which may be referred to, we do not deem it necessary to construe article 677, although the doctrine seems to have been questioned. See Allen v. State, 4 Texas Ct. Rep., 106; though in that case we do not believe the question was involved. A plain reading of the statute shows that it was intended to cover a territory and guaranteeing a right of self-defense to our citizens not provided for in articles 675–6. Those articles authorize self-defense where the attack is so great as to threaten life or serious bodily injury. Article 677 authorizes self-defense as against a non-felonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable while the person killed is in the very act of making such unlawful and violent attack. As we understand by this, it does not authorize a killing when the party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack. We do not believe a party is compelled to wait until a battery has been inflicted on him, but the attack must be then imminent, immediate and impending, otherwise he is not to slay, and even in such cases all other means must be resorted to except retreating to avoid the killing. Testing the facts of this case by the law, as above enunciated, was the court required to give an instruction to the jury on this subject? We concede if there was testimony raising the issue and tending to show the circumstances requiring the charge, then it was incumbent on the court ·to give it. It is not necessary here to do more than refer to the salient

features of the case, which appellant insists required the court to give this charge. There was proof showing a disparity in size and strength between appellant and deceased; deceased was a strong robust man weighing about two hundred pounds, and appellant was an infirm weakly man weighing about one hundred and thirty pounds, besides he had been recently afflicted with rheumatism, all of which rendered him unequal in a personal combat with deceased. The other facts, from appellant's standpoint, exhibited the deceased to him as the aggressor. Deceased wanted to fight appellant, and cursed him as a son of a bitch. Appellant told him he did not want to fight and retreated, increased the distance between himself and deceased several steps: appellant says he was ten or twelve feet from deceased when the shooting occurred. Appellant further says that deceased made some demonstrations from which he believed he was attempting to draw a weapon. Appellant states this a number of times. Another witness states that deceased, when appellant stepped up on the gallery, remarked, "What have you got to do with it?" Appellant replied, "Nothing at all, I do not know who you are, and I do not want to have anything to do with you." That at this deceased drew back as if to hit appellant, and appellant stepped back off the porch; that as he did so, Mack, the deceased, turned around and ran both hands in his pockets and made a step or two north toward the barber-poll, and deceased said he would fight Christ; that appellant kept backing and appellant shot up in the ceiling of the gallery, and deceased said "Shoot, you son of a bitch" and then appellant shot him. Appellant says that he told deceased to stand back and shot up in the ceiling to stop him. Appellant says he shot him because he thought he was getting his gun out and he was cursing him; that he was not able to fight him; that deceased advanced toward him while the difficulty was going on two or three steps; that he was ten or twelve feet from him when he shot deceased—he may have been closer. Appellant further states that the only reason he shot deceased was because he thought he was going to draw a pistol on him, and that deceased was wanting to fight, and he (appellant) was not able to fight him.

This we believe is about all of the testimony bearing on this point, or at least it presents the salient features on which appellant contends that the charge in question should have been given. As we have seen in the construction of this statute, that is, we take it something more than a simple assault which would reduce the offense to manslaughter, but not such an attack as would threaten life or serious bodily injury must be made. Was this such an attack, aside from the attack with a deadly weapon (which appellant testifies he apprehended and on which the court safeguarded appellant's right of self-defense under article 675) ? Was this a violent attack on the part of deceased, or in other words, was it such an attack as this statute contemplates? The language is "the deceased must be in the very act of making such unlawful and violent attack." At the time, according to all the testimony,

deceased was not in reach of appellant who, although he may not have been compelled to retreat, had already increased the distance between himself and deceased. If under any of the testimony appellant had reason to apprehend a battery, it was with deceased's hands and fists merely. According to appellant's testimony deceased doubtless was about to attack him, but deceased was not at the time he was shot in the very act of attacking appellant, and aside from the fact that appellant might have resorted to other measures than retreating before deceased actually attacked him, we do not believe that the attack was so imminent as to have required the court to give the charge in question, much less to have justified appellant in shooting the deceased. In self-defense against an attack, real or apparent, which threatens life or serious bodily injury, we have seen that the danger must be immediate, imminent and pressing before a defendant is authorized to slay. See Bush v. State, 40 Texas Crim. Rep., 541–2. And certainly in a case where the danger is not so serious the attack must be equally immediate and pressing. The language of the statute itself indicates this, for it requires that the killing must take place while the person killed is in the very act of making such unlawful and violent attack. We do not believe that the circumstances detailed in the testimony, viewing the matter from the most favorable standpoint, required the court to give the requested charge. Indeed, appellant's own testimony would appear to base his right of self-defense on the necessity of protecting himself against an attack which threatened his life or threatened him with serious bodily injury, and to have given a charge on the subject by the court in the first instance might have confused appellant's defense as testified to by him. See Orman v. State, 22 Texas Crim. App., 604. We accordingly hold the court did not err in failing and refusing to give a charge based on article 677, Penal Code.

Appellant also seeks to reverse this case because of the misconduct of the jury. The allegation is that the jury discussed testimony, regarding the bad character of the defendant, which was introduced as going to his credit, he being a witness, not only for the purpose of discrediting him but for the purpose of convicting him of the charge, and also it was mentioned in the jury room that appellant must have been put off the train by deceased, which was the cause of the killing. This matter was controverted before the court, and testimony heard pro and con, and the court held there was nothing that showed that these matters were used to the prejudice of appellant. The testimony shows that appellant's character was in evidence as being charged with other criminal offenses, but that the court instructed the jury to consider the same only in order to enable them to determine the weight and credit of appellant's testimony, and when this matter came up in the jury room, the charge was referred to and any further discussion stopped. It is also shown in the testimony that during the progress of the trial questions were asked of appellant and other witnesses

if deceased had not put him off the train on one occasion, which was denied, and that this matter was also referred to in the jury room, but as soon as reference thereto was made, that a quietus was put upon it to the effect that there was no testimony to that effect before the jury. We believe that the court properly held that the testimony showed nothing to prejudice the appellant on the ground stated.

We have examined the record carefully, and in our opinion there are no reversible errors, and the evidence is sufficient to sustain the verdict, and the judgment is affirmed.

*Affirmed.*

BROOKS, JUDGE.—I concur in the conclusion reached.

DAVIDSON, PRESIDING JUDGE.—I concur in result; I do not believe article 677, Penal Code, is involved in this case and under the facts the special charge was properly refused.