## A. JOUBERT V. THE STATE.

No. 19949.   Delivered December 7, 1938.
Rehearing Denied February 8, 1939.

The opinion states the case.

*Quentin Keith,* of Port Arthur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The appellant has been heretofore tried and convicted of murder without malice, and was given a penalty of three years,—see (133 Texas Crim. Rep., 405,) 111 S. W. (2d) 721,—which judgment was reversed. He is again before us on appeal from a conviction of murder with malice, and a penalty of eight years. For a statement of the facts we refer to the former opinion herein.

Appellant had filed and presented to the trial court a plea of former acquittal of the offense of murder with malice based upon the proposition that he having been formerly convicted of murder without malice, such was tantamount to an acquittal

of murder with malice. Under the prior murder law in this State when such offense was composed of different degrees, such was the law as is contended by appellant, but is now no longer the law as was plainly said in the case of Parks v. State, 99 S. W. (2d) 945, by Judge Hawkins on motion for rehearing:

"The State in its motion for rehearing expresses apprehension that the effect of our original opinion is to again read into the present murder statutes degrees of murder, thereby recognizing two offenses. We disclaim any such intention. Our expressions heretofore support such disclaimer. See Herrera v. State, 117 Tex. Cr. R. 389, 36 S. W. (2d) 515; Hunt v. State, 123 Tex. R. 559, 59 S. W. (2d) 836; Chappell v. State, 124 Tex. Cr. R. 187, 61 S. W. (2d) 842."

"The contention that the new murder statute, article 1257c, created two offenses—one of murder and one of murder without malice—has been rejected in a number of opinions of this court," citing cases. Stephens v. State, 68 S. W. (2d) 187.

Appellant's bill of exceptions No. 2 is a complaint on account of the failure of the court to define the word "voluntarily" as contained in the indictment, and he cites as an authority sustaining the proposition that such a definition should have been given, the case of Crutchfield v. State, 10 S. W. (2d) 119. We do find therein a statement upholding the proposition laid down by appellant; however such a statement was not called for in a proper disposition of the case, and is dicta. The present murder statute had been enacted just prior to the handing down of such opinion, and the learned judge who wrote the opinion in the Crutchfield case, supra, was endeavoring to chart a course to be thereafter followed in the trial of murder cases in this State, and allowed this dicta to come into his opinion in order to simplify such procedure. We have not followed such portion of that opinion since that time. In fact it is also said and recognized as dicta in the opinion on motion for rehearing in that case, but later again enunciated that the phrase "with malice aforethought" set forth in an indictment for murder carried with it the word "voluntarily". That it was not necessary to allege that such killing was "voluntarily" done, when there was included in such indictment the allegation that such killing was done "with malice aforethought."

We quote from Taylor v. State, 106 S. W. (2d) 682:
"Another attack upon the indictment is because it omits to allege that appellant 'voluntarily' killed deceased, the criticism being based on the fact that our present definition of murder

is 'Whoever shall voluntarily kill any person within this State shall be guilty of murder.' Art. 1256, P. C.

"It was held in Crutchfield v. State, 110 Tex. Cr. R. 420, 10 S. W. (2d) 119, that an averment that the killing was done 'with malice aforethought' was sufficient. See also Landers v. State, 114 Tex. Cr. R. 352, 25 S. W. (2d) 868; House v. State, 128 Tex. Cr. R. 404, 81 S. W. (2d) 708. It will be noted that the present indictment alleges that the killing was upon malice aforethought."

If an allegation in the indictment of a killing upon malice include a charge as being voluntary, which we have consistently held, then a definition of malice aforethought should carry with it a definition of the voluntariness of the act. The word "voluntary" is a word in common use, its meaning clear and well understood by the ordinary person, and not of such an involved, complicated or special meaning as to require a defining thereof to the jury. Where terms used are words simple in themselves, and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms, and under such circumstances such common words are not necessarily to be defined in the charge to the jury.

We have also heretofore held in the case of Swilley v. State, 25 S. W. (2d) 1100, that a killing may be a voluntary killing prompted by malice, or may not be thus prompted, as is evidenced by the passage of Art. 1257 b and c, but we also recognize the doctrine that a killing with malice aforethought must of necessity be a voluntary killing.

We quote therefrom: "By the foregoing clause (Art. 1257b) the legislature clearly recognized that, while all killings actuated by malice aforethought were voluntary, a killing might be voluntary with malice aforethought absent."

We do not think the court erred in its failure to include in its charge a definition of the word "voluntarily."

Appellant's bill of exception No. 3 complains of the fact that although the trial court charged the jury on murder with malice, murder without malice, aggravated assault and simple assault, nevertheless the court should have specifically, independently and affirmatively charged upon the specific intent to kill. This idea being based upon an assault with a hoe, which was not per se a deadly weapon. We note that the trial court in its charge on malice aforethought defined the same as the voluntary and intentional doing of an unlawful act, etc. We also find in the charge, in paragraph charging murder without malice, if the jury believed that the appellant's mind was af-

fected by certain emotions as laid down in the statute, Art. 1257c, "he struck the deceased not in self-defense, but with the intent to kill, then you will find him guilty of murder without malice," etc.

We also find the following special charge which was given by the careful trial judge to the jury: "Gentlemen of the Jury: You are instructed that the hoe introduced in evidence by the State is not a deadly weapon per se, that is the law does not consider said hoe a deadly weapon in itself. You are further instructed that the law does not presume that the defendant intended to kill the deceased from the means used, that is the use of the hoe. You are charged, therefore, that before you can convict the defendant of any offense other than assault and battery, that you must first find and believe from the evidence beyond a reasonable doubt that the defendant, at the time and place in question, and at the very time the blow was struck then and there entertained the specific intent to kill T. A. Cheshire, and if you do not so believe beyond a reasonable doubt, or if you have a reasonable doubt, then you will give the defendant the benefit of such doubt and acquit him of murder, but may consider whether or not he is guilty of aggravated assault or simple assault as explained to you in the main charge."

We are of the opinion that the law relative to a specific intent to kill was fully covered in these charges, and especially so in the special charge above quoted, which charge was evidently relied upon by the trial judge as remedial and making more specific that portion of the general charge relating to murder with malice.

Bill of exceptions No. 4 is abandoned in appellant's brief, and will not be here discussed.

Bill of exceptions No. 5 complains of the trial court's charge on the law of self-defense as applied to a lesser attack than one threatening death or serious bodily harm to appellant. This cause was reversed on a former trial mainly because of no charge being given relative to appellant's right to defend against such lesser attack. Appellant now says that the charge herein given relative thereto was too restrictive in that it fails to allow appellant to take into consideration the words used by the deceased at the time of the fatal difficulty as well as his acts, and does not allow him the right to couple with the acts of the deceased any words used by the deceased at such time.

Such is a true doctrine when applied to what we might term a major anticipated attack, and made thus true by statute, Art. 1222, P. C., as follows: "It must reasonably appear by the acts

or by words coupled with the acts of the person killed that it was the purpose and intent of such person to commit one of the offenses above named," and such charge was properly given by the trial court. But when applied to such a lesser or milder attack, we are driven to the provisions of Art. 1224, P. C. In Art. 1222 (1) P. C., we find that it must reasonably appear by the acts or by words coupled with the acts of the person killed that it was the purpose and intent of such person to commit certain offenses above enumerated.

Art. 1224, P. C., dealing with a milder or lesser attack, is more restrictive, and does not contain the reasonable apprehension of danger as evidenced by the acts or words coupled with acts, but merely provides that: "Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack," etc.

It will thus be seen that a defense against a milder attack is not anticipatory and does not authorize the use of the appearance of danger as evidenced by acts coupled with words as is done in the previously herein quoted statute relative to a more serious attack. Such a defense, being incorporated in Art. 1222, P. C., we have heretofore uniformly held that the substance thereof should be incorporated in the court's charge by virtue of such statute. Not so, however, when dealing with the lesser attack. Such a defense not being included in Art. 1224, P. C., it is not a parcel thereof, and not necessary to charge the jury in such terms when dealing with such milder or lesser attack.

Appellant next complains of the court's application of Art. 1223, P. C., wherein he charged on a presumption arising on account of the use of a weapon upon the part of the deceased person, the complaint being based upon appellant's request to the trial court to charge that a shovel in the hands of the deceased at the time he met his death was per se a deadly weapon. The court did give in his charge to the jury the provisions of such Art. 1223, P. C., but did therein submit to the jury to decide the question as to whether or not the shovel was a deadly weapon, and hence we find the basis of appellant's complaint as embodied herein.

From the facts we gather that the shovel with which the deceased was equipped at the time he was killed was an or-

dinary steel shovel with a handle about five or six feet long, and of about the same weight and length as the hoe with which appellant struck the deceased the fatal blow. We find from the transcript that appellant requested the court to charge the jury, and the court did so charge the jury, that the hoe with which the deceased was killed was not a deadly weapon per se. It seems to us that it would only be fair to the State to allow the jury to decide whether a like instrument to the one in the hands of appellant but in the hand of deceased was a deadly weapon. Appellant, having advanced the proposition that such a weapon was not a deadly weapon per se in the hands of appellant, should be held to the same rule when a like weapon is in the hands of the deceased at the time of the fatal difficulty. We see no error in the action of the trial court in thus allowing the jury to pass upon the deadly character of both weapons.

What we have heretofore said relative to appellant's bill of exceptions No. 5 is also applicable to his bill No. 7, and evokes a similar ruling. We do not think the court's charge is susceptible to the criticism contained in this bill, which is that nowhere therein does it allow the appellant to defend on an appearance of danger to himself. We think the charge on self-defense continuously takes care of appellant's rights to defend on the ground of apparent danger as viewed from his standpoint, in each and every instance, as fully as the law required him to do. The charge is full and painstakingly drawn, affording the appellant all the rights guaranteed him under the law.

We have perceived no error in the trial hereof, and this judgment is accordingly affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—In his motion for rehearing appellant criticizes the statement in the original opinion as follows: "It will thus be seen that a defense against a milder attack is not anticipatory and does not authorize the use of the apperance of danger as evidenced by acts coupled with words as is done in the previously herein quoted statute relative to a more serious attack." The quoted statement seems to be in harmony with the rule announced in Bryant v. State, 100 S. W. 371, from which we take the following: "Article 677 (now article 1224) authorizes self-defense as against a nonfelonious assault, and that is where the attack is of a violent character, and in such case self-defense is only allowable while the person killed is in the very act of making such unlawful and violent attack. As we understand by this, it does not authorize a killing when the

party is about to attack, or is doing some act preparatory to the attack, but he must be then making such unlawful and violent attack."

See also Jones v. State, 69 S. W. (2d) 65.

After re-examining appellant's contentions we are constrained to adhere to the conclusions expressed in the original opinion.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.