HESTER BROWN *alias* HEATHER BROWN V. STATE.

No. 24113. October 20, 1948.
Rehearing Denied November 24, 1948.

Hon. Owen M. Lord, Judge Presiding.

*D. F. Sanders* and *J. A. Veillon,* both of Beaumont, for appellant.

*Jep S. Fuller,* County Attorney, and *Ramie H. Griffin,* Assistant County Attorney, both of Beaumont, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This is a conviction of assault with intent to murder with malice, with punishment assessed at two years' confinement in the penitentiary.

Christine Redoux, the injured party, and her fourteen-year-old daughter lived near the appellant. On the morning of August 26, 1947, the injured party went to work, leaving the daughter at home. A short time thereafter she received a telephone call relative to some difficulty that had arisen between the daughter and appellant. As a result of this information she called appellant over the telephone, seeking an explanation. Appellant refused to talk with her. The injured party then left her place of work and went home and into appellant's yard near the back porch and called to appellant, who was on the back porch, asking what the trouble was between her and the daughter. Appellant, without answering, went into the house, got a pistol, and returned and fired several shots, two of which struck her (the injured party) in the head, another in the left shoulder, and another in the hand. The injured party recovered from the injuries, but is paralyzed.

The foregoing is the State's case, and shows an unprovoked and unjustified shooting of the injured party by appellant.

It was the theory of the appellant, as shown by her testimony and that of others, that the injured party came to the

back yard of her home and began to curse and abuse and threaten to whip her, whereupon she, appellant, went into her house, got the pistol, and returned to the porch. As to what then happened, we quote from the testimony of appellant upon direct examination, as follows:

"The gun was in the middle bedroom, right next to the kitchen. I had it in a cedar bag, and I got it and walked out on the porch crying and I begged her to go on home, and she said 'I ain't scared of no God damned gun' and I fired the first bullet in the ground and the next bullet was the one in the shoulder and she stepped to me and put her foot on the bottom door step and had her right hand in her bosom, and the second time, I wouldn't lie, I don't really know how I hit her, and after she fell I got in the door and lacher the door and called the law and the ambulance. I said she had her right foot on the step of my house and her right hand was up in her bosom. She drawed a butcher knife on me one time before. I was afraid of her. I fired the shots at her because I was scared of her and I figured after she seed the gun she would go home. I knowed she was much more of a woman than me and I wasn't going to let her get on me if she had anything, that's the reason I did that. I didn't intend to kill her. She had her right foot on the bottom steps, she would have come up the steps, she was right to the steps."

Upon cross-examination, appellant testified:

"I went in the house and got my gun after she cursed me and she was still there arguing and I got the gun and shot her. I shot on the porch first. I am sure about that as I am everything else I have said. Then I shot again. She got closer to the porch and put her right foot on the bottom door step and held her right hand in her bosom. She never did come up on the porch where I was. She told me she wasn't afraid of that gun. She must not have thought I was going to shoot. I shot straight down on the back porch. The first time I shot her was in the shoulder but I didn't remember the last time. She put her hand in her bosom just like this (indicating) and stood up with one foot on the ground and one on the door step, just like that (indicating). She didn't move any from where she was. When I shot her the second time that's the time she fell and I went in the house and rang for the ambulance. The first time I know I shot on the porch, and then I shot her twice."

When the injured party was examined at the hospital there was found hidden in her bosom an ice pick.

We have set out this testimony in view of appellant's contention that she was entitled to have the jury instructed upon her right to defend herself against the attack of the injured party, less than deadly, as provided by Art. 1224, P. C.

An examination of the charge reflects that the trial court inserted in his charge a paragraph setting out the elements of the article mentioned, but made no application of those legal principles to the facts. The trial judge did, however, accord to appellant the right of self-defense against the attack of the injured party, providing a reasonable expectation or fear of death or serious bodily injury.

The defense accorded by Art. 1224, P. C. is against an "unlawful and violent attack." We have repeatedly held that this does not include an apparent attack, demonstrations as if to attack, or some act preparatory to attack. Joubert v. State, 136 Tex. Cr. R. 219, 124 S. W. (2d) 368; Boykin v. State, 148 Tex. Cr. R. 13, 184 S. W. (2d) 289, Mounts v. State, 148 Tex. Cr. R. 177, 185 S. W. (2d) 731.

According to appellant's own version of the matter, she fired the first shot to scare and the second and succeeding shots as the injured party stood with one foot on the doorstep and put her hand in her bosom.

These facts do not show an unlawful and violent attack on the part of the injured party, within the meaning of Art. 1224, P. C. The opinion is expressed that the facts did not present the issue of self-defense, under that statute, and the trial court did not err in refusing to charge thereon.

The question discussed is the sole question presented by appellant's brief.

The judgment is affirmed.

Opinion approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In her motion for rehearing appellant lodges a number of complaints about what the opinion did hold and what it did not hold. We have carefully reviewed the record in the light of these complaints and are of the conclusion that the original

opinion properly disposed of all issues in the case. Each "point" enumerated has been definitely considered but we do not deem it of value to the jurisprudence of the State to discuss them all.

"Point No. 3" complains that this Court committed error in holding that the issue of self-defense against an assault less than deadly, under Article 1224 P. C., was not raised by the evidence. Appellant testified that the prosecuting witness came to her back door and they engaged in a quarrel in which there was much swearing and threats were made. The prosecuting witness was going to whip appellant, but there is no evidence of any gesture whatsoever until appellant began to shoot. The first shot was fired to the ground, "* * * and the next bullet was the one in the shoulder and she stepped to me and put her foot on the bottom door step and had her right hand in her bosom." This is the testimony of the appellant, unmodified by any other so far as we can see. Consequently, the firing was done while the parties were engaged in a typical negro quarrel.

In order to be able to invoke the defense described in Article 1224 of the Penal Code, "* * * all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack." The injured party had merely threatened, at some unspecified time in the future, to whip appellant. Whether it was five minutes later, five hours, or five days, is immaterial. The shooting did not take place while the injured party was "* * * in the very act of making such unlawful and violent attack."

Appellant's motion for rehearing is overruled.