W. B. HOGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 46278.

Court of Criminal Appeals of Texas.

July 3, 1973.

Daniel H. Benson, Lubbock, for appellant.

Blair Cherry, Jr., Dist. Atty., Ronald M. Jackson, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed by the jury at twenty years.

The evidence shows that Caroline Hogan, ex-wife of appellant, and the deceased went to Mrs. Hogan's home in Lubbock about 1:00 A.M., on September 25, 1971. Shortly thereafter, "kicking, banging and hollering" were heard at the front door. Mrs. Hogan identified the voice at the front door as belonging to appellant and testified he said, "Come here you S.O.B. I have something for you." She told the deceased that it was appellant and urged the deceased not to go to the door. Mrs. Hogan's testimony further reflects that deceased went to the front door and, immediately after she heard him "flip this lock," a "shot gun blast" came through the door and struck deceased in the chest. Dr. Richard Keffler, a pathologist, testified that deceased died from internal hemorrhage caused by shotgun pellets.

In his first contention, appellant urges that he was indigent and confined in the county jail at the time a motion for psy-

chological examination and evaluation was filed, and that the court was in error in not appointing a qualified practicing psychiatrist.

The State points to appellant's motion in which it was alleged that appellant was probably insane at the time the offense was committed and requested a psychological examination and evaluation. Appellant's motion recommended that "Dr. Dick Wall, a qualified practicing psychologist, be named to conduct such examination." The court granted appellant's motion, ordered that Dr. Wall conduct the examination, and further ordered that Dr. Wall's fee be paid out of the general fund of Lubbock County.

Appellant argues that his failure to insist upon the appointment of a qualified psychiatrist, rather than a clinical psychologist, did not relieve the court of its responsibility to insure that an indigent appellant would not be put to trial without an opportunity to prepare and present an adequate defense based upon insanity at the time of the alleged offense. Appellant urges that the court's failure to appoint a practicing psychiatrist deprived him of due process of law, equal protection of the law and effective assistance of counsel, all in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.

Dr. Wall testified that, in his opinion, appellant was in a psychotic state at the time of the shooting and did not have the ability to distinguish the difference between right and wrong.

The court charged the jury on the defense of insanity at the time of the alleged murder.

Dr. Wall's qualifications were listed as a B.A. degree in psychology, a Masters degree in general psychology, a Ph.D. degree in clinical psychology, a year of internship in a medical school, a second internship in a VA Hospital, work with the Big Spring State Hospital, consultant for South Plains Guidance Center, certification by the Tex-

as State Psychological Board of Examiners. At the time of trial, Dr. Wall was engaged in private practice as a clinical psychologist in Lubbock.

In McCollum v. Bush, 344 F.2d 672 (5th Cir. 1965), cited by appellant, it was stated: "It seems clear to us, *under the facts of and circumstances of this case,* that in adjudicating Bush guilty and sentencing him to life imprisonment without any psychiatric testimony, the state denied Bush both a fair trial and the effective assistance of counsel." (emphasis supplied) A footnote in McCollum v. Bush, supra, reflects that the only testimony came from a clinical psychologist whose sole examination was made during a noon recess while trial was in progress.

In Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965), also relied on by appellant, it was stated: "In the circumstances shown, a substantial question having arisen as to the defendant's mental capacity at the time of trial, the appointment of a psychiatrist at government expense was required." The only expert in *Jacobs* was a clinical psychologist, employed at the Atlanta Penitentiary, called as a witness by the government and who possessed nothing more than a routine prison examination upon which to base his opinion testimony at trial.

Appellant urges that only his inability to pay for the services of a psychiatrist prevented a proper presentation of his case. See Jacobs v. United States, supra. Appellant cites Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963) and Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1961), for the proposition that in criminal proceedings discrimination between indigents and those who possess the means to protect their rights will not be tolerated. We find appellant's reliance on the foregoing authorities to be misplaced, since the court in the instant case appointed Dr. Wall, the person appellant had recommended for the exami-

nation and evaluation in his motion. It is not logical to conclude that appellant's recommendation of Dr. Wall was prompted by his financial inability to personally hire a doctor. No request was made by appellant for further examination and evaluation at the time of the appointment or through the course of the trial. Complaint was made for the first time in a motion for new trial. See Burton v. State, Tex.Cr.App., 471 S.W.2d 817.

■ In Watson v. State, 161 Tex.Cr.R. 5, 273 S.W.2d 879, this Court, while noting that a psychiatrist is best qualified to pass upon a question of mental illness, stated that a practicing psychologist who had considerable training and experience in analyzing motivation for human conduct should be classified as an expert. Art. 46.-02, Section 2(f), Vernon's Ann.C.C.P., provides that: "The court may, at its discretion, appoint disinterested qualified experts to examine the defendant with regard to his present competency to stand trial and to his sanity, and to testify thereto at any trial or hearing in connection to the accusation against the accused; . . ." Dr. Wall defined clinical psychology as "the profession of diagnosing of psychological trouble through test and interview." The education and experience of Dr. Wall would clearly appear to qualify him as an expert in the field of clinical psychology.

The extensive testimony of Dr. Wall in which he related his evaluations and opinions based on interview and test of appellant is in contrast to the cursory examinations in McCollum v. Bush, 344 F.2d 672 (5th Cir. 1965) and Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965).

■ Under the circumstances of this case, we conclude that the court did not err in not appointing a psychiatrist on its own motion to examine appellant.

Appellant contends that the verdict was contrary to the evidence in that a preponderance of the evidence showed that appellant was insane at the time of the offense.

■ The burden of proof as to insanity, absent an unvacated adjudication of insanity, is upon accused by a preponderance of the evidence. Burton v. State, Tex.Cr. App., 471 S.W.2d 817; Fuller v. State, Tex.Cr.App., 423 S.W.2d 924; Cross v. State, Tex.Cr.App., 446 S.W.2d 314; Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137.

In addition to the testimony of Dr. Wall, appellant's niece testified that appellant was so obsessed with his former wife that he could not concentrate on anything for a period of time, and when she visited appellant at the jail thirty-two to thirty-four hours after the homicide his eyes had "a wild look," and he could not carry on a rational conversation. Appellant's former lawyer testified that appellant was unable to talk about anything other than his ex-wife.

John Hildreth testified that appellant came to his home about 2:00 A.M., on September 25, 1971, and told him, "I just shot a man." Hildreth stated that he had never seen appellant look or act like he did on that occasion, but, when he was asked if there could have been anything wrong with appellant other than being drunk, Hildreth stated that he didn't know. Hildreth stated that he had been around appellant in the two or three weeks before the homicide, and he had not observed any change in his pesonality nor had he noted that appellant had lost his ability to concentrate.

Officer Coleman, of the Lubbock Police Department, arrested appellant about 4:00 A.M., on September 25, 1971. Coleman testified that appellant's speech was slurred, but that he appeared to know what was going on.

■ The range of evidence regarding appellant's conduct before and after the offense in question is wide; however, as the court stated in its charge, "The insanity must have existed at the very time of the commission of the offense, and the mind must have been so dethroned of reason as to deprive the person accused of a knowl-

edge of the right and wrong as to the particular act done."

■ We find that the jury's rejection of appellant's plea of insanity at the time of the commission of the offense is supported by the evidence. See Ross v. State, 153 Tex.Cr.R. 312, 220 S.W.2d 137.

Appellant next contends that the jury verdict is contrary to the law and the evidence in that the evidence is insufficient to show the death of the victim named in the indictment and further that it was not shown that the death of deceased was the result of any act of the appellant.

Caroline Hogan recognized appellant's voice at the door at the time of the shooting. The testimony of Hildreth reflects that appellant came to his house at 2:00 A.M. on the morning in question and said, "I just shot a man." Appellant left a shotgun at Hildreth's house identified at trial as belonging to appellant. Officer Crimmins investigated the shooting and found an empty shotgun shell about six or eight feet from the front door, where the fatal shot was fired. Fred Rymer, a ballistics expert with the Department of Public Safety, identified the shell as having been fired from appellant's gun.

We find no merit in appellant's argument that the court erred in accepting the testimony of Dr. Keffler regarding the autopsy since Dr. Keffler did not know the deceased and was dependent upon what others told him relative to his identity. Dr. Keffler testified that Judge LaCroy had asked him to perform the autopsy. Dr. Keffler stated that he labeled the person upon whom he performed the autopsy "Leroy Dacy" (the name of the deceased alleged in the indictment). Officer Hargrave saw the deceased at the house (where the shooting occurred), later at the hospital, and then at the morgue. Hargrave stated that deceased was not breathing when he saw him at the hospital, was turning blue and appeared to be dead.

■ We find the foregoing testimony sufficient to identify deceased as the person alleged to have been killed and reject appellant's contention that the evidence was insufficient to show that the death was as a result of any act of appellant. See 29 Tex.Jur.2d, Sections 175 and 176 (1960).

Appellant contends the court erred in refusing to grant appellant's motion for individual examination of the veniremen.

■ Only in capital cases where the State has made it known it will seek the death penalty does a defendant have the absolute right to a separate examination of each juror under Article 35.17, subd. 1, V. A.C.C.P. Morales v. State, Tex.Cr.App., 466 S.W.2d 293; Moore v. State, Tex.Cr. App., 424 S.W.2d 443.

■ Appellant contends the court erred in failing to declare a mistrial or, in the alternative, obtain another jury panel when a member of the panel stated in the presence of the other panel members that he did not believe in allowing a man to escape punishment by pleading the defense of insanity.

The record reflects that a member of the panel was stopped short in his answer when he said, "I don't believe that a person that does something and tries to get out of it by pleading insanity . . . ." After a hearing at the bench, the court sustained a challenge for cause to the member of the panel who had made the complained of statement. There was no request to have the jurors to disregard the complained of answer and no motion was made to discharge the members of the panel who heard the remark. Livingston v. State, Tex.Cr.App., 445 S.W.2d 528; McLarty v. State, 165 Tex.Cr.R. 64, 302 S.W.2d 420. No error is shown.

Appellant's ninth contention is multifarious, containing numerous arguments relative to alleged errors in the court's charge.

Appellant urges that the court erred in not defining "voluntary" and "intentional" or the terms "sound memory and discretion."

■ In Joubert v. State, 136 Tex.Cr.R. 219, 124 S.W.2d 368, appellant complained because the court did not define "voluntary" in its charge. This Court stated:

"The word 'voluntary' is a word in common use, its meaning clear and well understood by the ordinary person, and not of such an involved, complicated or special meaning as to require a defining thereof to the jury. Where terms used are words simple in themselves, and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms, and under such circumstances, such common words are not necessarily to be defined in the charge to the jury."

■ We find the foregoing statement of the court, in *Joubert,* not only germane to appellant's complaint regarding the court's failure to define "voluntary" but it also serves as an appropriate answer to appellant's complaint of the court's failure to define "intentional" and "sound memory and discretion."

■ Appellant contends the court erred in use of the term "victim" to describe the deceased in its charge to the jury.

Appellant urges that, by using the word "victim," the court is creating the impression that the crime charged was actually carried out, whereas, if appellant were insane at the time of the shooting, no crime was committed but merely a tort. A portion of the definition given in Webster's New International Dictionary, 2d ed., defines "victim" as follows:

"2. A person or living creature injured, destroyed, or sacrificed, in the pursuit of an object, in the gratification of a pas-

sion, at the hands of another person, from disease, accident or the like; . . . ."

If, as appellant claimed, deceased was killed as the result of an act of an insane man, he would still be a "victim" just as much as if he had been killed by the deliberate act of one who was sane. No error is shown.

■ Appellant's next complaint regarding the court's charge is that the court should have instructed the jury that, if they had a reasonable doubt as to whether appellant was guilty of murder with malice, they should have been instructed that the jury might, as opposed to must, find him guilty of murder without malice.

Suffice it to say that, if the jury believed beyond a reasonable doubt that appellant was guilty of murder and then had a reasonable doubt as to whether appellant, in committing the offense, was prompted by malice, they must find him guilty of murder without malice. No error is shown.

Appellant complains of the court's instruction on what may be considered in deciding the issue of insanity.

■ The appellant urges that the jury should have been given a thorough and detailed instruction on this issue, but fails to be any more specific as to how the court's charge on insanity is deficient. We find no error. See Willson's Texas Criminal Forms, Section 3586; 1 Branch's Ann.P.C., Section 59.5 (2d ed. 1956).

■ Lastly, appellant complains of the court's failure to instruct the jury on circumstantial evidence.

A charge on circumstantial evidence need not be given where there is in evidence an admission or a confession by the accused admitting that he killed the deceased. Corbett v. State, Tex.Cr.App., 493

S.W.2d 940; Steel v. State, Tex.Cr.App., 459 S.W.2d 649; Patterson v. State, Tex. Cr.App., 416 S.W.2d 816; Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178; 4 Branch's Ann.P.C., Section 2050 (2d ed. 1956).

While it may be correctly argued that the statement of appellant to his friend Hildreth within an hour after the shooting, "I just shot a man" is not a full admission of the crime in question, such confession must be considered in the light of all the other evidence. In Steel v. State, supra, appellant urged that his confession did not fully admit the crime so as to relieve the court of the responsibility of charging on circumstantial evidence. This Court, in rejecting defendant's contention in *Steel,* first stated that the Court did not agree that the defendant's confession was not a full confession, and then said, "If we be wrong, then the confession must be considered in light of all the other evidence . . . ." This Court concluded in *Steel,* "When the facts are taken together, we conclude the court did not err in failing to charge on the law of circumstantial evidence."

No voice other than appellant's was heard at the door where the fatal shot was fired. There is no suggestion that anyone else was present. Appellant's invitation, "Come here you S.O.B. I have something for you," was followed by a shotgun blast when his ex-wife's male companion went to the door. An empty shell found near the door was identified as having come from the gun taken by appellant to his friend's house where his admission of shooting a man was made.

When these facts are taken together with appellant's admission, we conclude that the court did not err in failing to charge on the law of circumstantial evidence.

The judgment is affirmed.

Opinion approved by the Court.