JENKINS 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-421-CR





CALVIN HARLEY JENKINS,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 



FROM THE COUNTY COURT AT LAW NO. 1, WILLIAMSON COUNTY



NO. 32968-1, HONORABLE TIMOTHY G. MARESH, JUDGE PRESIDING



 





 Jenkins appeals a conviction for the offense of driving while intoxicated. Tex. Rev.
Civ. Stat. Ann. art. 6701l-1(b) (West Supp. 1994). The issue is whether the trial court committed
harmful error by including an instruction concerning physical deterioration and a definition of
"normal use" in the charge. We will affirm. 



BACKGROUND


 Jenkins was convicted for driving while not having the normal use of mental or
physical faculties by reason of the introduction of alcohol into the body. See Act of May 27,
1983, 68th Leg. R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev. Civ. Stat. Ann.
art. 6701l-1(a)(2)(A), since amended). At trial, the State called as witnesses the arresting officers
who testified about Jenkins' performance on the field sobriety tests. Jenkins essentially defended
on the grounds that, while he had consumed approximately three to four beers earlier in the
evening, he was tired, nervous, and upset when the tests were performed, but he was not
intoxicated. Jenkins also offered testimony from his wife, daughter, and employer who testified
that Jenkins appeared normal, rather than intoxicated, when he was with them, when he was
talking with the officers, or when he was on videotape.

 After the close of the evidence, Jenkins timely objected to two portions of the
charge. He objected to the following instruction:



 You are instructed that if a defendant allows his physical condition to
deteriorate to such an extent that he thereby makes himself more susceptible to the
influence of alcohol than he otherwise would have been and by reason thereof
becomes intoxicated by the recent introduction of alcohol into his body, he would
be in the same position as though his intoxication, if any, was produced by the use
of alcohol alone.



Jenkins objected that the instruction was an improper statement of the law, a comment on the
weight of the evidence, and not raised by the evidence. He also objected to the definition of
"normal use." The charge defined "normal use" as "the manner in which the normal non-intoxicated person would be able to use his faculties." Jenkins objected to the definition on the
grounds that the statute did not define "normal use" and that the definition was an improper
statement of the law. Both objections were overruled and the instruction and definition were read
to the jury. Jenkins argues these objections on appeal in five points of error.



DISCUSSION


 Because Jenkins timely objected to the instruction and definition in the charge, any
error in these portions of the charge requires reversal if the error is calculated to injure the rights
of the defendant. Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984). This means there must be some harm to the accused
from the error. The actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative evidence, the
argument of counsel, and any other relevant information revealed by the record of the trial as a
whole. Almanza, 686 S.W.2d at 171.

 Jenkins' first three points of error address the instruction concerning physical
deterioration. Jenkins first argues that the instruction is an improper statement of the law. He
agrees that fatigue is an alternative cause defense and does not entitle a defendant to an instruction
when fatigue is raised in the evidence. See Drapkin v. State, 781 S.W.2d 710, 711 (Tex.
App.--Texarkana 1989, pet. ref'd); see also Moore v. State, 736 S.W.2d 682, 684 (Tex. Crim.
App. 1987) (holding trial court did not err in refusing requested instruction that merely denied one
of the state's elements); Humphrey v. State, 264 S.W.2d 432, 433-34 (Tex. Crim. App. 1953)
(not error to refuse instruction stating that jury must find not guilty if it found that defendant
suffered from illness, loss of sleep, or that condition result of aspirin, and was not under influence
of intoxicating liquor). However, Jenkins argues that the State's instruction prevented Jenkins
from negating the element of intoxication. We disagree. 

 The charge concerns the synergistic effects of fatigue and alcohol. The Court of
Criminal Appeals has held that a person who gets himself in a condition whereby he may become
intoxicated from a lesser quantity of whiskey than it would ordinarily take to produce intoxication
is nevertheless intoxicated from the use of whiskey. Miller v. State, 341 S.W.2d 440, 442 (Tex.
Crim. App. 1960); Kessler v. State, 125 S.W.2d 308, 309 (Tex. Crim. App. 1939). In Kessler,
the court concluded that the defendant was not entitled to an instruction which stated to the effect
that if she was intoxicated from the combined use of amytal, a sedative, and whiskey, then the
jury must acquit her. (1) 125 S.W.2d at 309. The court stated, "If she indulged in the use of amytal
to such an extent that she thereby made herself more susceptible to the influence of intoxicating
liquor than she otherwise would have been and by reason thereof became intoxicated from the
recent use of ardent spirits, she would be in the same position as though her intoxication was
produced by the use of whiskey alone." Id. 

 The Court of Criminal Appeals reaffirmed this holding in Heard v. State, 665
S.W.2d 488, 489-90 (Tex. Crim. App. 1984). In Heard, the court upheld an instruction
informing the jury of the combined effect of alcohol and drugs when the information only alleged
that the defendant was under the influence of intoxicating liquor. At trial, a doctor for the defense
testified that the defendant was receiving medications for hypertension, and that the effect of these
medications might make a person in defendant's physical condition acting under the effects of
these medications appear to be intoxicated. On cross-examination, however, the doctor testified
that the combination of these medications with alcohol might cause an individual to lose his mental
alertness more quickly than if he was drinking only alcohol. The instruction in Heard is similar
to the one at issue in this case:



You are further instructed that if a Defendant indulges in the use of drugs to such
an extent that he thereby makes himself more susceptible to the influence of
intoxicating liquor than he otherwise would have been and by reason thereof
becomes intoxicated from the recent use of intoxicating liquor, he would be in the
same position as though his intoxication was produced by the use of intoxicating
liquor alone.



Id. at 489. Citing Kessler, the court held that the jury was appropriately charged because under
case law, a combination of liquor and drugs which would make an individual more susceptible to
the influence of the liquor is in effect equivalent to intoxication by liquor alone. Id. at 490. The
court concluded that the charge did not expand on the allegations of the information but merely
applied the facts of the particular case to the law. Similar instructions have also been upheld by
courts of appeals. See Sutton v. State, 858 S.W.2d 648, 649-50 (Tex. App.--Amarillo 1993, no
pet.) (use of Heard charge when information only alleged intoxication by use of alcohol did not
authorize conviction on theory not alleged in the information); (2) Booher v. State, 668 S.W.2d 882,
884 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd).

 Jenkins argues that these cases are distinguishable because they involved the
combination of drugs and alcohol, rather than the combination of drugs and fatigue. Mindful of
this distinction, we believe the underlying principle behind these cases is the defendant's increased
susceptibility to intoxication by alcohol rather than the means by which that susceptibility is
achieved. In Kessler, Heard, Sutton, and Booher, either drugs were not yet included as
intoxicants under the statute or the use of drugs was not alleged in the indictment or information. 
Thus, the use of drugs could not have been an independent basis for conviction in these cases, just
as fatigue could not provide an independent basis in this case.

 The charge, read as a whole, makes clear to the jury that the defendant must
become intoxicated by alcohol. The challenged instruction speaks of intoxication as being
produced "by the recent introduction of alcohol into the body." Moreover, the charge defines
intoxication solely as "not having the normal use of physical or mental faculties by reason of the
introduction of alcohol into the body." Thus the charge did not prevent Jenkins from proving that
he was tired and upset rather than intoxicated. As in Heard and the other cases cited above, the
instruction did not expand on the allegations of the information, but merely applied the law to the
facts of this particular case. We overrule the first point of error. 

 Jenkins next argues that the instruction was not raised by the evidence. He
contends there was no evidence that he had done anything to allow his physical condition to
deteriorate to such an extent that he made himself more susceptible to the influence of alcohol. 
He also argues that the evidence in Heard contained expert testimony to show that drugs combined
with alcohol can increase the effects of alcohol. 

 During his opening argument, Jenkins' counsel stated, "you are going to hear
evidence that Calvin was working a tremendous number of hours," and "Calvin is going to tell
you, `I was tired and I was angry that evening, but I was not intoxicated.'" Jenkins, his
employer, and his wife testified that he had worked at a construction job at Seton Hospital in the
morning, and then gutted and spray-painted a burned apartment unit until late afternoon. They
testified that, around six in the evening, he went home where his wife, daughter, and daughter's
boyfriend were getting ready to have a barbecue, drank approximately three to four beers, and
was called back to Seton Hospital where he had to climb up in a ceiling unit and repair a
humidifier. Jenkins then drove home around eleven-thirty, when he was stopped by the police
for speeding and given the field sobriety tests. In addition, Jenkins' counsel asked two of the
police officers on cross-examination if fatigue would affect how a person does on those tests. On
cross-examination, the prosecutor asked Jenkins,



Prosecutor: Do you think alcohol, in your experience would alcohol [a]ffect you
more when you are tired?

 

Jenkins: Yes, sir. It [a]ffects you more when you are tired. Yes, it does.


Prosecutor: Does it [a]ffect you more?

 

Jenkins: Not saying me. No, sir.

 

 . . . .

 

Prosecutor: What I am asking though, if you were tired would alcohol [a]ffect
you more than if you were not tired, you personally.


Jenkins: That depends on how tired I was.

 

Prosecutor: Well, as tired as you were on 9/15/91.

 

Jenkins: I'd have to say no for the amount of beer I drank.



While Jenkins stated that alcohol did not affect him on the day of his arrest, based on his own
experience, he stated that alcohol can affect a person more when he is tired. The jury can believe
or disbelieve any portion of a witness' testimony. Hellums v. State, 831 S.W.2d 545, 547 (Tex.
App.--Austin 1992, no pet.). We believe the testimony as a whole raised the issue addressed by
the challenged instruction. Moreover, expert testimony was not required because intoxication is
a subject on which a layperson may give an opinion. See Garza v. State, 442 S.W.2d 693, 695
(Tex. Crim. App. 1969) ("A non-expert witness may express his opinion that a person was drunk
based on his observation of the accused"). We believe a layperson may testify to the greater
effects alcohol on a fatigued person, especially when the testimony comes from the defendant
himself. We overrule the second point of error.

 Finally, Jenkins argues that the instruction makes a comment on the weight of the
evidence by suggesting that "appellant's physical condition had deteriorated to such a point that
he was more susceptible to the influence of alcohol." A charge that assumes the truth of a
controverted issue is a comment on the weight of the evidence. Whaley v. State, 717 S.W.2d 26,
32 (Tex. Crim. App. 1986). However, in this case, the instruction is conditioned by the use of
the word "if," stating that "if a defendant allows his physical condition to deteriorate" and
qualifies intoxication by including "if any." The jury instruction does not assume that physical
deterioration or intoxication occurred. Moreover, a written charge must set forth the law
applicable to the particular case. Tex. Code Crim. Proc. Ann. § 36.14 (West Supp. 1994). As
we have already concluded, the issue of the combination of fatigue and alcohol was raised by the
evidence. The trial court properly instructed the jury on the applicable law based on Heard and
Kessler. We conclude that the instruction is not a comment on the weight of the evidence. We
overrule the third point of error.

 In Jenkins' fourth and fifth points of error, he argues that the trial court erred by
defining "normal use" in the charge. The court's charge first gives the statutory definition of
intoxication: "Intoxication means not having the normal use of physical or mental faculties by
reason of the introduction of alcohol into the body." See Tex. Rev. Civ. Stat. Ann., art.
6701l-1(a)(2)(A) (West Supp. 1994). The charge then defines "normal use" as "the manner in
which the normal, non-intoxicated person would be able to use his faculties." Jenkins first argues
the trial court erred by defining a term left undefined by the legislature and which has a common
and ordinary meaning. He relies on caselaw holding that a court does not err when refusing to
define a term undefined by statute and having a common and ordinary meaning. See Mosley v.
State, 686 S.W.2d 180, 182 (Tex. Crim. App. 1985) (citing Andrews v. State, 652 S.W.2d 370,
375 (Tex. Crim. App. 1983)); Hogan v. State, 496 S.W.2d 594, 599 (Tex. Crim. App.), cert.
denied, 414 U.S. 862 (1973); Depauw v. State, 658 S.W.2d 628, 634 (Tex. App.--Amarillo 1983,
pet. ref'd). 

 We agree that "normal use" has a common and ordinary meaning. (3) However,
while a court is not required to define a common term undefined by the statute, it is not
necessarily erroneous for the court to do so. Before the legislature amended the DWI statute to
define intoxication, the Court of Criminal Appeals upheld an instruction stating that a person was
deemed intoxicated when he did not have the normal use of his physical and mental faculties by
reason of the use of intoxicating liquor. See Cox v. State, 150 S.W.2d 85, 86 (Tex. Crim. App.
1941). The Court approved the definition, finding that it "was sufficient to fully protect the
appellant in his legal right." Id. The Court of Criminal Appeals later upheld a charge which
defined "intoxicated" and "under the influence of intoxicating liquor." Pierce v. State, 265
S.W.2d 601, 602 (Tex. Crim. App. 1954). The court stated that the terms did not need to be
defined, but it was not error for the court to do so if the definition given was a proper one. Id.;
see Lockhart v. State, 1 S.W.2d 894, 895 (Tex. Crim. App. 1927) (in response to the court's
charge defining intoxicated, court held: "it is not necessary to give any definition of the terms
used in the statute, but, one having been attempted, we think it not erroneous"). Therefore, we
must determine if the definition given was a proper one.

 Jenkins argues the definition is an improper statement of the law because it judges
the defendant's faculties against a reasonable-person standard and makes irrelevant any evidence
concerning what is normal for the individual defendant. The State responds that "normal use" is
measured against an objective standard. In defining "normal use" in the charge, the State
borrowed language used in a Dallas Court of Appeals opinion, Massie v. State, 744 S.W.2d 314
(Tex. App.--Dallas 1988, pet. ref'd).

 In Massie, the defendant challenged the sufficiency of the evidence to support his
DWI conviction. Like Jenkins, the State sought to convict Massie under the definition of
intoxication provided in section 6701l-1(a)(2)(A), for "not having the normal use of mental or
physical faculties by reason of the introduction of alcohol . . . into the body." (4) The information
varied slightly from the statute by alleging that the defendant did not have "the normal use of his
mental and physical faculties." Massie argued that there was insufficient evidence for his
conviction because there was no proof of Massie's normal use of his faculties. Thus, he
interpreted the State's inclusion of the pronoun "his" in the information to require proof of his
normal abilities. 

 The court of appeals disagreed. It concluded the information did not require proof
of the defendant's normal abilities. In making its sufficiency review, the court stated, 



Rather, it means that the faculties which must be tested belong to appellant. If
there was evidence that appellant could not use his faculties on the occasion in
question, in the manner in which the normal non-intoxicated person would be able
to use his faculties, the evidence is sufficient to convict him unless the jury finds
that his inability to perform on that occasion is not due to intoxicants (e.g.
diabetes; epilepsy).



Massie, 744 S.W.2d at 316 (emphasis added). The italicized clause above is the exact language
used in the definition of "normal use" in Jenkins' case.

 In Massie, the court of appeals relied heavily on its earlier opinion, Watkins v.
State, 741 S.W.2d 546 (Tex. App.--Dallas 1987, pet. ref'd). The court of appeals implied in
Watkins that the level of intoxication is based on an objective standard. As with Massie, the
information alleged that the defendant did not have "the normal use of his mental and physical
faculties," thus including the pronoun "his" when the statute did not provide one. See Watkins,
741 S.W.2d at 549. The defendant argued that the information was fundamentally defective
because it charged a theory not authorized by the statute; he argued that the pronoun "his"
modified "normal use of mental and physical faculties." Similarly, he argued that the definition
of intoxication in the charge--also stating "the normal use of his mental and physical
faculties"--lessened the State's burden of proof by "allowing [the state] to prove appellant's
intoxication by showing a departure from his own driving skills, rather than from those of the
general driving public." Watkins, 741 S.W.2d at 550.

 The court disagreed. It concluded that the use of "his" before "mental and physical
faculties" merely signified that the faculties are appellant's and did not create a material difference
between the information and the statute. With respect to the definition in the charge, the court
stated,



The language of the jury charge simply tracks the wording of the information in
defining "intoxication" and in applying the law to the facts. . . The word "his"
merely signifies that the faculties in question are appellant's. In our view, it is
highly unlikely that the jury gleaned from the instructions, as appellant suggests,
that they were to determine appellant's level of intoxication based on a subjective
rather than an objective standard.



Id. at 551 (emphasis added). By its conclusion quoted above, the court of appeals implicitly stated
that the level of intoxication is based on an objective standard. Relying on Massie and Watkins,
the State argues that its definition of "normal use" mirrors Texas case law.

 We hold that the charge's definition of "normal use" is a proper statement of the
law. Unless a word is a term of art, we must give the word its ordinary meaning. Tex. Gov't
Code Ann. § 312.002 (West 1988); see Andrews v. State, 652 S.W.2d 370, 376 (applying Code
Construction Act to "prurient interest"). "Normal" is synonymous with "regular." If something
is normal, it conforms to a standard or regular pattern. See Websters Third New International
Dictionary 1540 (Philip B. Gove ed., 1961). The omission of a personal pronoun in the statute
reflects an objective standard. Under article 6701l-1(a)(2)(A), the State is required to prove that
the defendant did not have the normal use of mental or physical faculties. It is not required to
prove that he did not have his normal use of faculties. Therefore, the defendant's use of his
faculties must conform to the use of a normal non-intoxicated person.

 Determining intoxication by an objective standard does not render irrelevant any
evidence concerning what is normal for the individual defendant. An objective test for
intoxication does not prevent the jury from concluding that the defendant's lack of normal use was
caused by some reason other than the introduction of alcohol into the body. In Massie, the court
held that evidence showing the defendant could not use his faculties as a normal non-intoxicated
person is sufficient to convict unless the jury finds that the inability to perform on that occasion
was not due to intoxicants. Massie, 744 S.W.2d at 316. Therefore, a jury may consider the
defendant's individual characteristics, such as a speech impediment or mobility impairment, as
evidence of an alternate cause for the defendant's failure to perform adequately on the tests. 

 Jenkins argues that even if the normal non-intoxicated person is the proper
standard, it is error to instruct the jury on this standard. He relies on precedent holding that the
trial court may not instruct the jury about the presumption of intent to commit theft arising from
the act of breaking and entering a habitation at nighttime. See Browning v. State, 720 S.W.2d
504, 506-07 (Tex. Crim. App. 1986). The Court of Criminal Appeals held in Browning that,
although the jury may make such an inference and the appellate court may rely on such inference
in its sufficiency review, the trial court cannot instruct the jury on this presumption and give the
force of law to one possible inference, thus commenting on the weight of the evidence. Id. at
507. However, the charge in this case provided the definition of a term--the State's burden of
proof--not a presumption for reviewing its proof. While the State must prove the subjective intent
to commit a theft in burglary cases, the State need only prove an objective normal use in DWI
offenses. Therefore, the charge properly defined an element of the offense. We overrule points
of error four and five. Having overruled all points of error, we affirm the trial-court judgment. 





 


 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Kidd and B. A. Smith


Affirmed


Filed: August 17, 1994


Do Not Publish
1.   At that time, the driving while intoxicated statute did not define intoxication to
include a combination of alcohol and drugs. See Act of Mar. 17, 1937, 45th Leg., R.S.,
ch. 60, § 1, 1937 Tex. Gen. Laws 108, 108 (1925 Tex. Penal Code art. 802, since repealed).
2.   We note that Sutton was written after the legislature amended the DWI statute to include
the ingestion of drugs or a controlled substance as an intoxicant. See Act of May 27, 1983,
68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev. Civ. Stat. Ann.
art. 6701l-1(a)(2)(A), since amended).
3.   We note that this Court has rejected the argument that the definition of
"intoxication" is unconstitutionally vague because the statute fails to define "normal." See
Irion v. State, 703 S.W.2d 362, 363-64 (Tex. App.--Austin 1986, no pet.). 
4.   In both Massie and an earlier case, Watkins v. State, 741 S.W.2d 546 (Tex. App.--Dallas
1987, pet. ref'd), the Dallas Court of Appeals upheld the constitutionality of the DWI statute. 
The court rejected the argument that the statute was unconstitutional because it made no
reference to whether "normal use" requires an objective or subjective standard. See Massie,
744 S.W.2d at 316; Watkins, 741 S.W.2d at 548.