Jimmy STEEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 42715.

Court of Criminal Appeals of Texas.

Nov. 18, 1970.

Al Clyde, Fort Worth, for appellant.

Sam Cleveland, Stephenville, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is an appeal from a conviction for murder with malice with the punishment assessed by the jury at 41 years.

The appeal in this cause was previously abated. See Steel v. State, 453 S.W.2d 486. The trial court having taken steps to assure the appellant of effective aid of appellate counsel, the appeal has been returned to this court.

The indictment charged the appellant with the murder of Sharon Curtis, shown by the evidence to be his three and a half year old stepdaughter.

The record reflects that on Tuesday, June 4, 1968, the 21 year old appellant, his wife, Sarah Steel, her daughter Sharon Curtis by a previous marriage and their daughter Helen went fishing in the Brazos creek. The family arrived home in the early afternoon and Mrs. Steel left to purchase some pillows. When she returned she heard Sharon, the deceased, crying in the bathroom. Upon inquiring appellant informed her he had spanked the child. Mrs. Steel departed again to take her sister to her home. Upon her subsequent return she discovered the deceased still crying and was informed by the deceased that her daddy had hurt her.

The next morning (June 5) Mrs. Steel noticed that Sharon was covered with bruises and was holding her head and stomach. At noon Mrs. Steel requested appellant's permission to take the child to a doctor, but he refused the request. The child's stomach began to swell that afternoon and Mrs. Steel repeated her request which was again refused. That night the deceased cried "a lot in her sleep."

On Thursday morning (June 6) the child began to vomit profusely and her eyes appeared to be glassy. Late Thursday afternoon the appellant finally gave his wife permission to call a doctor. The doctor, however, said that it would be too expensive to make a house call so he merely called in a prescription to the drugstore for suppositories and informed the mother to bring the child to his office the next morning. The child was given a suppository, but in a few minutes the child appeared to be dead. Mrs. Steel ran next door and asked the neighbor to call a doctor. The neighbor called the police.

On June 7, 1968, an autopsy was performed. Dr. D. B. Murray testified the deceased's left pelvis had a fresh fracture and there was a ruptured intestine which had resulted in peritonitis. He also found bruises on the forehead, the face, the cheek, and the back of the head. Inside the skull the brain was congested and swollen with edema fluid so that the lower part of the brain was deformed by compression. Dr. Murray related that death could have resulted from either the untreated peritonitis resulting from the ruptured intestine or the edema of the brain, both appearing to be due to external blows with a blunt object like a foot in a boot. He found no disease, deformity or other reason for the death. The testimony of both Dr. Murray and Dr. Hamilton reflected that the blows to the head and ruptured intestine had occurred within one or two days prior to death.

On the night of June 7 the appellant was questioned by the authorities and given his constitutional warnings. At first he insisted the bruises on the deceased's body were caused by a fall on some rocks while the family had been fishing. When informed that the autopsy report reflected a beating or a kicking, appellant gave a written confession admitting that while his wife was away from home on the afternoon of June 4 he had given the deceased a whipping for "messing in her pants." He stated, "I knocked her down on the floor some while I was doing this. I hit her all over with my hand while I was doing this. I also kicked her once with my foot and at this time I had boots on." He acknowledged he kicked and hit her on previous occasions and had called her a bastard and other names. He also stated that "[o]nce she was carried to Dr. O'Quinn by her grandmother."

In his initial ground of error the appellant contends "[t]he trial court erred in restricting the testimony of the defendant's witness, Mrs. Eugene Howard, as to the child's bruised and burned condition to a period of two weeks prior to the child's death."

Mrs. Howard, a neighbor of the Steels for a period of the two months prior to the deceased's death, testified that she had observed various bruises on the deceased within two weeks of the death, and that shortly before such demise she observed the deceased had a burned mouth which Mrs. Steel stated resulted from hot gravy. Mrs. Howard was not permitted to testify that in the two months she had known the deceased the child always had bruises on her body. She related she had never seen either the appellant or his wife inflict injuries on the deceased and had never inquired as to the cause of the apparent bruises.

If the court erred in excluding this limited portion of Mrs. Howard's testimony, we fail to perceive that it was so prejudicial as to call for a reversal. See 5 Tex.Jur.2d,

Appeal and Error—Criminal, Sec. 448, p. 715. The appellant does not point out what "full and complete defense" he was denied from presenting by the exclusion of this testimony. Ground of error #1 is overruled.

In grounds of error #2 and #3 appellant claims the court erred in permitting Mrs. Edna Weeks to testify as to events transpiring more than two months prior to the death of the deceased "in connection with her condition," while restricting the defense to two weeks, and further erred in permitting the witness to relate what she told the appellant and his wife about a doctor's statement since the same was hearsay.

Mrs. Weeks, the maternal grandmother of the deceased, was called as a rebuttal witness for the State. She related that in March of 1968 she had taken the deceased to a Dr. O'Quinn. Over objection she testified she then told appellant and his wife that Dr. O'Quinn wanted the deceased taken to a baby specialist in Fort Worth. Her testimony did not in any way describe the deceased's condition or difficulties at the time. Further, Mrs. Steel had earlier testified without objection that the several months prior to the death the appellant had injured the deceased and her mother had taken the deceased to a doctor who advised that the deceased be taken to a Forth Worth doctor and that the appellant had refused to do so. While denying inflicting the earlier injury, the appellant on cross-examination admitted Dr. O'Quinn wanted a specialist in Fort Worth to examine the deceased. His written statement also reflected that Mrs. Weeks had taken the child to Dr. O'Quinn.

The admission of the complained of testimony over objection was not error where the same testimony was already in evidence without objection. 5 Tex.Jur.2d, Sec. 448, Appeal and Error—Criminal, supra.

Grounds of error #2 and #3 are overruled.

■ Next, appellant contends the court erred in permitting the jury to separate on the second night of the trial although jurors had been kept together on the first night. The separation was prior to the court's charge and after careful admonitory instructions by the court. The trial judge did not abuse his discretion. See Article 35.23, Vernon's Ann.C.C.P.

Ground of error #4 is overruled.

■ Appellant's fifth ground of error is that the trial court erred in refusing to charge the jury concerning the voluntariness of his confession. His timely presented objection reads:

"Now comes the Defendant and he objects and excepts to the Court's Main Charge for the reason that he does not charge the jury that if they should find and believe from the testimony that the Defendant gave the statement offered and entered into evidence as State's Exhibit Number 6, under the *illusion* that such statement would help to get his wife released from custody or was for the purpose of helping her out. That in that event such statement should not be considered for any purpose whatsoever as evidence because the same would not be a free and voluntary confession. For the reason that the Defendant's testimony shows that he gave such statement for that purpose, that is, helping his wife avoid prosecution or being confin*d* in jail. If the jury should find that that was the reason for the Defendant giving such statement that they should not consider the same for any purpose whatsoever." (emphasis supplied)

The statement was admitted into evidence following a separate Jackson v. Denno [1] type hearing in the absence of the jury. See Article 38.22, V.A.C.C.P. During the hearing the appellant acknowledged that he had been properly warned of his rights and had waived the same, and the confession had been given voluntarily. He admitted that he knew his wife was not in custody, that he had not asked the authorities about his wife, or even where she was at the time. At the conclusion of the hearing the defense counsel announced he was making no objection as to the voluntariness of the confession. The trial judge admitted the confession finding it had as a matter of law and fact been voluntarily given, and that no coercion, duress, threats, promises or other improper influences were exercised.

In the presence of the jury the appellant, while not repudiating his earlier testimony, related that he made the statement under the illusion of helping his wife "out" as he thought the police might charge her with some offense in connection with the deceased's death. There was no showing that the appellant's wife was ever arrested, held in custody or that the officers taking the confession made any remark or statement concerning his wife. It would appear that the illusion was supposedly self-planted and was not the result of any improper inducement.

We cannot agree that the evidence was sufficient to require the court to submit the issue of voluntariness to the jury.

■ The motive of a person in confessing, expressed for the first time at trial, is of no importance provided the particular confession does not result from threats, fear, promises or other improper inducements made by persons in actual or seeming authority. As Wigmore points out, "It must be remembered that no attempt is ever made to investigate the *actual* motives of the person confessing, or the part played by the inducement among other motives." (emphasis in the original) Wigmore, Evidence, 3rd ed., Sec. 853, p. 333.

Even if we be mistaken as to our conclusion that the trial court did not err in failing to respond to appellant's objection, we cannot conclude that the error, if any, was

calculated to injure the rights of the appellant or that he has been deprived of a fair and impartial trial. See Article 36.19, V.A.C.C.P.

 Lastly, appellant urges the trial court erred in refusing to charge on the law of circumstantial evidence.

Appellant recognizes the well established rule that proof of an accused admitting or confessing to having killed the deceased is direct and not circumstantial evidence of the main inculpatory fact and a charge on circumstantial evidence is not required when proof of such admission or confession is in evidence. 4 Branch's Ann.P.C., 2d ed., Sec. 2050, p. 358; Patterson v. State, Tex. Cr.App., 416 S.W.2d 816; Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178; Stevenson v. State, 169 Tex.Cr.R. 431, 334 S.W.2d 814, 815. He contends, however, that where the confession does not fully admit the crime charged and it is only by a process of inference from the confession that it can be determined that the defendant committed the crime or was a guilty participant therein, the court is not relieved of the responsibility of charging on circumstantial evidence when there is a timely presented objection or special requested charge. While appellant is correct in his statement of the law, we do not view his confession as falling into this last category. If we be wrong, then the confession must be considered in the light of all the other evidence including the statement of the deceased to her mother that "Daddy hurt me," the results of the autopsy, etc.

When the facts are taken together, we conclude the court did not err in failing to charge on the law of circumstantial evidence.

It should be observed further that the rule is also well established that if the facts proved are in such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony, a charge on circumstantial evidence is not required. 4 Branch's Ann.P.C., 2d ed., Sec. 2050, p. 359. Patter-

son v. State, supra; Chapin v. State, 167 Tex.Cr.R. 390, 320 S.W.2d 341.

Ground of error #6 is overruled.

Finding no reversible error, the judgment is affirmed.