**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joel Carruth STOKES, Defendant-**
**Appellant.**

**No. 72–1937.**

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1973.

Charles L. Weltner, James W. Dorsey, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., J. Owen Forrester, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Joel C. Stokes appeals from his conviction for embezzlement and willful misapplication of bank funds in violation of 18 U.S.C. § 656, and for making false entries in bank records for the purpose of deceit in violation of 18 U.S. C. § 1005. We affirm.

Stokes was indicted in four separate indictments charging 11 counts of violations of 18 U.S.C. § 656 [1] and 18 U.S.C. § 1005.[2] The indictments alleged that Stokes, as vice president and trust officer of Citizens Trust Company of Atlanta, Georgia, had embezzled and willfully misapplied bank funds and made false entries in bank statements and records for the purpose of deceiving bank officers and bank examiners. In several of the alleged transactions, Stokes made and approved loans to fictitious persons, such as "Ruth J. Carr," and "Rudolph Edwards," and used the proceeds to purchase real estate. On other occasions, Stokes took bank funds, converted them into cashier's checks, and exchanged the checks for bank stock from L. D. Milton, the president and chief executive officer of Citizens Trust. Stokes also caused the bank's operating accounts to be debited and the proceeds deposited in Stokes' personal checking account to cover overdrafts incurred as a result of his political campaign for city alderman.

1. 18 U.S.C. § 656 provides:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and "insured bank" includes any bank, banking association trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation. June 25, 1948, c. 645, 62 Stat. 729.

2. 18 U.S.C. § 1005 provides:

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company which has become a member of one of the Federal Reserve banks and "insured bank" includes any state bank, banking association and trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation. June 25, 1948, c. 645, 62 Stat. 750.

For most of his life, Stokes had been a protege of the bank's president, L. D. Milton. Mr. Milton served as the bank's president for fifty years. At trial Stokes admitted participating in the alleged transactions but contended that they had been performed at Milton's direction. Stokes testified that the real estate was acquired on behalf of the bank and that fictitious names were used to obtain the loans and purchase the real estate because the bank, according to regulatory agencies, was already over-invested in real estate and Milton wanted to conceal these further acquisitions. Stokes contended that the other transactions were "loans" of bank funds to Milton and that Stokes was holding the stock as collateral for the bank. He also explained that the transfers of bank funds to reduce the overdrafts in his personal checking account were made at Milton's suggestion. To support his contention that all the transactions were authorized by Milton, Stokes sought to introduce evidence of twenty-two other transactions, unrelated to those in the indictments, that were intended to show that Milton dominated the bank and often approved bank operations that violated banking regulations or were otherwise irregular. On the government's motion to quash the evidence, the trial court restricted the evidence to the transactions mentioned in the indictments. Stokes was later convicted on 8 of the 11 counts—two counts of embezzling, five of misapplication of bank funds, and two of making false entries—and sentenced to three years. Stokes appealed.

## I

Stokes' first contention is that the trial court erred in denying his offer of proof. He argues that since intent to injure the bank is an essential element of an offense under 18 U.S.C. § 656, evidence of other "irregular" transactions is relevant to show that the transactions in the indictments were authorized and consented to by the bank. Stokes relies mainly on United States v. Klock, 2 Cir.

1954, 210 F.2d 217, in which the defendant was charged with willful misapplication of bank funds by causing the bank to pay checks drawn by a depositor on insufficient funds. The Second Circuit held that it was error for the trial court to exclude evidence, consisting in part of financial statements of the bank's dealings with other companies, which tended to show that there was a bank policy of treating overdrafts as loans. The court noted that the existence of a bank policy of making loans in this manner would bear on the issue of the defendant's intent to defraud the bank. The court stated:

> If these exhibits had been received in evidence, the jury could have then reasonably inferred that not only did the bank's officers know about the $60,000 of undebited overdrafts which the bank did not report as overdrafts to the State Banking Department and the Federal Reserve, but also that the bank's officers, . . . thus considering the overdrafts as loans, had authorized Klock to omit posting them as debits against depositors' accounts. In effect, the defense to the substantive counts of misapplication of funds was that the bank officials treated the overdrafts as loans. While perhaps making of loans in this manner may be violation of some state law, nevertheless it does not constitute a crime under . . . 18 U.S.C. § 656, if Klock had no notice of the impropriety.

210 F.2d at 221.

■ The *Klock* case is not this case. In *Klock*, the evidence sought to be introduced related to transactions similar to those with which the defendant was charged. Evidence of a bank policy or practice of treating overdrafts as loans would have been relevant to show that the defendant's actions in causing the bank to pay checks drawn on insufficient funds were authorized and consented to by the bank. In the present case, the evidence sought to be introduced did not relate to any specific bank policy or practice. Rather, it consisted of trans-

actions wholly unrelated to those with which the defendant was charged. The existence of irregularities in other unrelated and dissimilar bank operations was irrelevant to the issue whether the specific transactions alleged in the indictments were authorized. Such evidence could have only provided the basis for further indictments, not exculpated the defendant. Furthermore, Stokes did not even contend that he acted according to any regular bank policy or practice but contended merely that Milton authorized the transactions mentioned in the indictments. Stokes testified extensively on this issue. Milton was unable to attend the trial because of ill health.[3] Both parties deposed him, but his deposition was not offered in evidence. Stokes failed to show that he was prevented from introducing any evidence relevant to the issues in the case. We therefore conclude that the trial court did not abuse its discretion in rejecting Stokes' offer of proof.

In addition, we note that authorization would not constitute a defense as to the alleged violations of 18 U.S.C. § 1005. Section 1005 provides that it is unlawful to make a false entry in any bank record with intent to deceive any bank officer or bank examiner. Thus, authorization or consent by a bank officer would not be a defense to the charge of making a false entry to deceive a bank examiner. United States v. Klock, 2 Cir. 1954, 210 F.2d 215.

## II

Stokes' second contention is that the trial court erred in charging the jury with regard to circumstantial evidence. The trial court advised the jury that intent was an essential element of the crimes charged, that it is often very difficult to prove intent by direct evidence, and that intent may therefore be inferred from circumstantial evidence. Stokes argues that when the government relies on circumstantial evidence to prove intent, the defendant is entitled to an instruction that the circumstantial evidence must be such as to exclude every reasonable hypothesis other than that of guilt. We disagree. Some courts have indeed advocated the instruction suggested by the defendant. But as the Supreme Court held in Holland v. United States, 1954, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150, the better rule is that when the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect. In the present case, the trial court properly instructed the jury on reasonable doubt. Thus, there was no need for an additional instruction on circumstantial evidence. O'Neal v. United States, 5 Cir. 1969, 411 F.2d 131, cert. denied 396 U.S. 827, 90 S.Ct. 72, 24 L.Ed.2d 77; Piassick v. United States, 5 Cir. 1958, 253 F.2d 658; Gregory v. United States, 5 Cir. 1958, 253 F.2d 104; Bryant v. United States, 5 Cir. 1958, 252 F.2d 746.

The instruction suggested by the appellant has been applied in this Circuit only as the standard by which the trial court considers a motion for judgment of acquittal and the standard by which the appellate court reviews the denial of such a motion. O'Neal v. United States, *supra*; Sykes v. United States, 5 Cir. 1967, 373 F.2d 607, cert. denied 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138;

---

3. At the time of trial during March, 1972, Mr. Milton was in his seventies. Mrs. Ruth Crutcher was Mr. Milton's personal secretary and assistant from 1955 until he retired in 1971. During the later years she observed a change in his mental state and testified that, "There are sometimes when he is, I would consider him, not coherent, you know some days more than others." She added, "Well, there are times that he might even ask me what day it is, the day, or if I would give him a transaction to approve, by his questions I knew he didn't know exactly what I was talking about, or he wasn't following me as he had done maybe on previous occasions in his thinking, I guess the way I've always knew him to think. He would have understood what I was saying, you know, without asking any questions."

Cuthbert v. United States, 5 Cir. 1960, 278 F.2d 220; Vick v. United States, 5 Cir. 1954, 216 F.2d 228.[4]

We conclude, therefore, that the decision of the district court must be affirmed.

Affirmed.

4. In Vick v. United States, *supra*, the court stated:

In circumstantial evidence cases, this Court has said repeatedly that to sustain conviction the inferences reasonably to be drawn from the evidence must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence. (citations omitted) In such cases the test to be applied on motion for judgment of acquittal and on review of the denial of such motion is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude.

216 F.2d at 232.