James Gaston **HIELSCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48715.

Court of Criminal Appeals of Texas.

July 10, 1974.

Marvin O. Teague, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, and Andy Tobias, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for felony theft wherein the punishment, enhanced under Article 62, Vernon's Ann.P. C., was assessed by the court following a verdict of guilty at ten (10) years.

The indictment in the first paragraph charged the primary offense of felony theft alleging the appellant stole "six guns of over the value of fifty dollars . . . ." from S. M. Blok.

In six grounds of error the appellant challenges the sufficiency of the evidence to sustain the conviction for the primary offense and complains of the court's failure to charge the jury on the law of circumstantial evidence.

Denise Blok testified that on December 1, 1972, she had been to the hospital to visit her husband, and upon returning to her home at 2714 Lazy Spring in Houston about 3:45 p. m. she and her young son discovered the front door unlocked and the

doorknob had scratch marks on it. She found some six guns, a digital clock radio, her sterling silver valued at $900.00 missing. She placed a value of the guns at $1,100.00 to $1,200.00. She identified State's Exhibit #2, a .38 caliber Smith and Wesson pistol bearing serial number 76J120, as one of the guns taken in the burglary.

Her husband, S. M. Blok, also identified the pistol above described as being his. Both Bloks related that they did not know the appellant and had not given him or anyone else permission to break and enter their house and take the items in question. Houston Police Officer Netters investigated the burglary and theft and determined that pliers had been used to twist the doorknob.

Edwin John Kunkel testified that on December 12, 1972, he had an altercation with his son at his wife's place of business in Houston and had taken a pistol away from his son. It was turned over to the police who answered the disturbance call. He identified State's Exhibit #2 as that pistol.

Edwin Douglas Kunkel, who admitted he was on probation for possession of heroin, had been a narcotic addict, was now using methadone, and had been in the psychiatric ward of a hospital, acknowledged that his father had obtained the pistol in question from him, but claimed the correct date was December 11. He testified that on that date he picked up the appellant who was hitchhiking and that, after they stopped at his mother's shop, he grabbed the loaded pistol away from the appellant and the altercation with his father followed a short time later. While equivocal about dates, he testified that some days earlier in December, 1972, he had seen the appellant at his (Kunkel's) apartment with someone named Allan and the appellant had the pistol in question with him and offered to sell him a .30–.30 caliber rifle and another one with a big scope. He related the appellant told him that the rifles and pistol were stolen. After first denying that the appellant

had told him where the pistol was stolen, he later related appellant informed him the pistol was stolen from Oshman's by reaching under the store counter while his companion distracted the salesman. Still later, he testified that when the appellant first brought the pistol to his apartment the appellant said "he and Skippy had burglarized a place." Kunkel did not know who Skippy was.

Kunkel also revealed that after his arrest on December 11th he sometime subsequently led officers to an apartment where he believed the appellant lived with Larry Latham, where two rifles, a pistol box and some silverware were found by police officers.

Detective Maddox testified Kunkel led them to the apartment in question where they found Latham and two girls, one of whom revealed that the appellant slept there the night before. They revealed there was an outstanding felony theft arrest warrant for the appellant and in looking for him in the apartment they saw a pistol box which bore the same serial number as State's Exhibit #2, some shotguns and rifles and silverware in the kitchen. The silverware was returned to Mrs. Blok.

Detective Krampota generally corroborated Detective Maddox's testimony and testified that Mr. Blok was unable to identify the shotgun and rifle taken from the apartment.

The officers testified that, not finding the appellant, they then went at Kunkel's direction to Kunkel's apartment where they found the appellant and Karen (Susie) Hendricks, who lived there with Kunkel. Appellant was arrested. There was no showing he was in possession of any of the stolen items.

Patty Dawson, manager of the apartment complex where Latham lived, testified that his name was on the lease for apartment #130, but appellant's name was on a ledger as one of those who was responsible for the rent, and she had seen him coming and going to apartment #130.

Latham testified for the defense he lived at the said apartment #130 at 8650 Pitner with a girl named Sandy, and they and Sandy's sister were there on December 13 when Kunkel and the officers came to the apartment and found the items described. He related that Kunkel had been to the apartment on an earlier occasion and had brought a pistol, which he identified as State's Exhibit #2, and pistol box or case; that he was upset about his girlfriend and threatening appellant, who was not present; and that, when he left, he left the pistol box behind. He testified that appellant had not brought the silverware to the apartment, although he acknowledged appellant had "moved in" during the latter part of November or the early part of December. He explained that he and his girlfriend, Sandy, had been at the apartment complex where Kunkel lived, that he had gone to Kunkel's apartment and upon his return Sandy was sitting on the hood of the car with a silverware box open. On cross-examination he admitted he had told Officer Maddox he had bought the silverware from an unknown individual at The Cue Club, but said he told a lie because of the way Maddox was treating him. He also acknowledged that he was serving a three year sentence for another burglary.

Another defense witness, Allan Jones, testified that appellant lived at his house on December 1, 1972, and that appellant on that date baby-sat for him and his wife with two children while they took another for immunization shots, and that appellant was apparently there from approximately noon until 4 p. m.

Paul Saey was called by the State in rebuttal. He testified he was the maintenance man at the apartment where Latham lived and that he had seen the appellant at apartment #130. He related that several days before appellant's arrest appellant offered to sell him a pistol which he identified as State's Exhibit #2.

We turn to the most serious question presented—the failure of the trial court to respond to a timely presented special requested charge and instruct the jury on the law of circumstantial evidence.

Saey's testimony placed the appellant in unexplained possession of recently stolen property (State's Exhibit #2) after the alleged offense and several days before his arrest. The testimony of Edwin Douglas Kunkel also placed the appellant in possession of the pistol shortly after the alleged offense, with the explanation to Kunkel that it was stolen, but stolen from Oshman's.

If this case rests alone upon the unexplained possession of recently stolen property, the court was in error in not giving the requested charge.

In 55 Tex.Jur.2d, Theft, Sec. 213, p. 478, it is written:

> "Proof of the unexplained possession of recently stolen property, or an explanation that does not admit the taking of the property from the person in whom possession is laid, is circumstantial evidence. It is not positive evidence of theft but is merely a circumstance to be considered with the other evidence in determining the guilt or innocence of the defendant, which is stronger or weaker according to the attending circumstances.
>
> "Although possession is presumptive evidence of guilt, as distinguished from positive or direct evidence, the inference or deduction of guilt arising therefrom is not a presumption or conclusion of law; it is an inference or deduction of fact to be drawn by the jury from the evidence. The mere fact of possession is not prima facie evidence that the possession is illegal, and does not shift the burden of proof from the state to the defendant."

As noted in the early case of Lehman v. State, 18 Tex.App. 174 (1885):

> "If all these facts (recent, exclusive and unexplained possession) concur, not only is a *prima facie* case made out, but one which will fully warrant conviction. Still, the case is one of circumstantial evidence, and the law presenting that character of case should be submitted to

the jury, because, while such circumstances are conclusive of guilt, they are nevertheless circumstances only from which the guilt is inferred, and not positive proof establishing it."

See and compare Allen v. State, 97 Tex. Cr.R. 467, 262 S.W. 502 (1924); Mims v. State, 140 Tex.Cr.R. 647, 146 S.W.2d 754 (1941).

The State contends that there is more here, however, than evidence of unexplained possession of recently stolen property. Attention is called to appellant's admission to Kunkel that the pistol was stolen from Oshman's, and it contended that the admission against interest reflects that the pistol was stolen, and his explanation as to the place where it was taken from was shown to be false by evidence showing that State's Exhibit #2 came from the Blok house.

█ It is well established that proof of an accused making an unequivocal admission or confession of the offense charged is direct and not circumstantial evidence of the main inculpatory fact, and a charge on circumstantial evidence is not required when proof of such admission or confession is in evidence. 4 Branch's Ann.P.C., 2d ed., Sec. 2050, p. 358; 31 Tex.Jur.2d, Instructions, Sec. 123, p. 688; Patterson v. State, 416 S.W.2d 816, 819 (Tex.Cr.App. 1967). It is true that admission or confession must unequivocally admit the commission of the act charged before the court is relieved of the necessity of giving a charge of this character. See 31 Tex.Jur.2d, Instructions, Sec. 123, p. 689. See Martinez v. State, 151 Tex.Cr.R. 316, 207 S.W.2d 387 (1948).

█ It is clear the statement attributed to the appellant that he stole the pistol from Oshman's is not unequivocally admission of the commission of the crime charged so as to render a charge on circumstantial evidence unnecessary. Further, Kunkel's testimony that when he first saw the appellant with the pistol appellant said he had "burglarized a place," without identifying the place and without stating

the pistol came therefrom, is not enough to call for a different result.

"This court has for some time held that the distinction between circumstantial evidence and direct evidence is that the latter applies directly to the ultimate fact to be proved, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proved. Beason v. State, 43 Tex.Cr.R. 442, 67 S.W. 96 (1902); Brown v. State, 126 Tex.Cr.R. 449, 72 S.W.2d 269 (1934); Ramos v. State, 478 S.W.2d 102 (Tex.Cr.App. 1972) (on State's Motion for Rehearing)."

█ And where guilt must be inferred from circumstances in evidence, the trial court has the duty to give a charge regarding the law of circumstantial evidence, and it is not relieved of such duty by virtue of the fact that circumstances may strongly point to the accused. Blankenship v. State, 481 S.W.2d 147 (Tex.Cr.App.1972).

For the failure of the trial court to respond to the timely presented special requested charge on the law of circumstantial evidence, the judgment is reversed and the cause remanded.